JOURNAL ENTRY AND OPINION
Plaintiff-appellant Cuyahoga County Department of Family Services (county) appeals the trial court's granting of permanent legal custody of Danielle (daughter) to her mother, Dana Grimes (mother).[1]
The daughter was born on December 22, 1995 to mother and Arthur Runevitch, Jr. (father.)[2] Upon discharge from the hospital, mother and daughter went to the home of father's parents (grandparents.) Mother and daughter stayed with grandparents for approximately eight months. Father was often working out of town, but when he was in town, he also stayed with his parents.
When the daughter was around eight months old, mother took a job training thoroughbred horses in North Carolina. She and the daughter moved there, and the father followed. Despite frequent arguments and some incidents of domestic violence, mother and father were married on February 24, 1997. Mother gave birth to a son in January of 1999, who was immediately removed from mother's custody because he tested positive for cocaine. In addition to the presence of cocaine in his system, the son had serious heart problems which required surgery within the week of his birth. There is no evidence that mother's cocaine use had any influence on the son's congenital heart problems. Because of his physical problems, neither parent is able to care for the son. The county in which he was born in North Carolina is seeking permanent custody of the son, but this issue had not been decided at the time of the hearing.
After the son was born, mother asked the grandparents to come and take care of her daughter, who is the subject of this appeal, until the son was out of the hospital. The grandparents traveled to North Carolina and took the daughter back to Cleveland, where she stayed for six or seven months.[3]
After the daughter returned to her parents in North Carolina, mother had father arrested again for domestic violence. Again, she asked the grandparents to come and help her. They came South to the trailer where the family was living and took the daughter to the store to buy food. Without informing the grandparents that she was leaving, mother left and, staying with the woman who is now her mother-in-law, did not return. After waiting two days for mother, the grandparents returned with the daughter to Cleveland in November 1998. Mother stated at the hearing that she was afraid to tell the grandparents of her whereabouts because she was hiding from their son: she feared for her life because her husband had threatened to kill her if she ever had him put in jail again.
At the adjudication hearing of February 4, 2000, grandfather testified that the daughter was neglected. He described the trailer where he found the daughter as filthy, with cockroaches and dishes stacked to the ceiling. He said the daughter was sleeping on a pile of dirty laundry. Mother disputed the grandfather's testimony. The grandparents returned to Cleveland with the daughter, where she remained until the dispositional hearing of June 26, 2000.
Shortly after the grandparents took the daughter back to Cleveland, mother moved with her new boyfriend to Graetna, Virginia, where she lived for eleven months prior to the adjudicatory hearing. Thus, at the time of the dispositional hearing, she had lived at the same address for sixteen months.
Once her divorce from father was complete, mother married her boyfriend. She also asked the grandparents to return her daughter now that her life was settled. When the grandparents refused, mother contacted the county social services. The county worked with mother's home county in Virginia to establish and monitor her case plan. The county also drafted a case plan for father, which he failed to follow.
At the adjudicatory hearings on November 9, 1999 and February 4, 2000, the court determined the daughter to be neglected pursuant to R.C.2151.03(a)(2). Although the original case plan's stated goal was permanent custody to the grandparents, the goal was amended in February of 2000 to reunification with the parents. The county services in Virginia continued to monitor mother's progress and report that progress to the Cuyahoga County social worker.
Mother substantially completed her case plan: she attended parenting classes, domestic violence classes, and drug assessment, and she obtained stable housing. All her drug tests were negative.
At the dispositional hearing, however, without prior notice to the court or to mother, the county announced that it was seeking permanent custody of the daughter so that the grandparents could adopt her. At the hearing the court awarded immediate custody of the daughter to mother. The county requested a stay of the order granting custody to the mother, and the court denied the request. The daughter has been with her mother since the dispositional hearing of June 26, 2000.
The county timely appealed the court's ruling.
For its first assignment of error, the county states:
 I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT TERMINATED THE TEMPORARY COMMITMENT OF THE CHILD AND PLACED THE CHILD IN THE LEGAL CUSTODY OF THE HER [sic] MOTHER WHERE COMPETENT AND CREDIBLE EVIDENCE DID NOT SUPPORT TERMINATION AND TERMINATION WAS NOT IN THE BEST INTEREST OF THE CHILD AS REQUIRED BY R.C. 2151.415(B).
R.C. 2151.415(B) states in pertinent part:
 After the dispositional hearing * * * in accordance with the best interest of the child as supported by the evidence presented at the dispositional hearing, [the court] shall issue an order of disposition as set forth in division (A) of this section * * *.
Division (A) states six options for the trial court to follow:
 (1) An order that the child be returned home and the custody of the child's parents, guardian, or custodian without any restrictions;
(2) An order for protective supervision;
 (3) An order that the child be placed in the legal custody of a relative or other interested individual;
 (4) An order permanently terminating the parental rights of the child's parents;
 (5) An order that the child be placed in a planned permanent living arrangement;
 (6) In accordance with division (D) of this section, an order for the extension of temporary custody.
The county alleges that the trial court was unreasonable and unconscionable in its decision to return the daughter to her mother rather than extending temporary custody with the county as provided in (A)(6), because the court's decision was not in the best interest of the daughter.[4]
Specifically, the county argues that the daughter's best interest was served by staying with the grandparents because the daughter was bonded with her grandparents. At the time of the hearing in 2000, the grandfather was seventy-six years old and the grandmother seventy-one. Moreover, the grandfather was in poor health and his mobility restricted. The daughter was four and a half years old.
Despite the county's bonding argument, the social worker reluctantly admitted that there was no bonding problem between the mother and daughter. He had to agree that the child knows who her mother is and has a relationship with her mother * * *. Tr. June 26, 2000 at 33. He even admitted that the daughter told him that she wanted to go home with her mother, although he later qualified that by saying that the daughter also stated that she wanted to stay with the grandparents.
The county also stated that it was seeking custody because mother had failed to complete her case plan by not visiting the daughter. The county cited a letter from social services in Virginia stating that although mother was progressing with her case plan, she needed to have more frequent visits with the daughter prior to regaining custody. This letter was not introduced into evidence and is not included with the file. It was reviewed by the trial judge, however, who stated on the record that the Virginia social services were concerned about the child's age, and the fact that she's been out of Mom's custody for almost two years. There has been no visitation since February, and their conclusion is that a return of custody at this time would be premature.
The Cuyahoga County social worker admitted, however, that he had received two letters from the guardian ad litem informing him that the grandparents were obstructing mother's phone calls to and visits with the daughter and that the guardian had asked for the social worker's help in facilitating these visits. When questioned regarding the phone calls and visitation between mother and daughter, the social worker stated that he did not remedy the phone call situation because I didn't feel it was a problem. Although he believed visitation was a problem in this case, the social worker admitted that the case plan did not address visitation. He also conceded that mother had substantially complied with her case plan.
The county also attempts to argue that mother's failure to visit constituted abandonment. As mother's brief points out, however, county never argued abandonment as a reason for county custody: the daughter was in custody for issues of neglect, not abandonment. Because there was never any adjudication that the daughter was abandoned, the county cannot now argue that abandonment is a ground for county custody.
The court's decision regarding permanent custody is determined by the best interest of the child as outlined in R.C. 2151.414. This statute requires that before a court may grant permanent custody of a child to [the county], the court must determine whether an award of permanent custody of a child to a children services agency is in the best interest of the child, and whether the child `cannot be placed with either of his parents within a reasonable time or should not be placed with his parents.' In Matter of: James McDaniel(Feb. 11, 1993), Adams App. No 92 CA 539, unreported, 1993 Ohio App. LEXIS 806, at 10.
The county has failed to show that giving permanent custody to the county would be in the best interest of the daughter. The mother and child demonstrated a bond. The mother complied with her case plan and established stable housing, remained drug and alcohol free, attended parenting and domestic violence classes, and appeared to be in a position to provide for daughter's basic and medical needs as required by the case plan. An appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence going to all the essential elements of the case. Id. at 14, citing State v. Schiebel (1990), 55 Ohio St.3d 71, 74. The county has failed to demonstrate that the trial court abused its discretion when it awarded custody of the daughter to her mother.
For its second assignment of error, the county states:
 II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FOUND THAT REASONABLE EFFORTS WERE NOT MADE TO PREVENT THE PLACEMENT OR MAKE IT POSSIBLE FOR THE CHILD TO RETURN TO HER HOME WHEN COMPETENT AND CREDIBLE EVIDENCE SHOW THAT A CASE PLAN WAS APPROVED BY THE COURT AND THE AGENCY AND ITS AGENT MADE REASONABLE EFFORTS TO PREVENT THE CONTINUAL REMOVAL OF THE CHILD FROM THE HOME.
The county argues that because the case plan was approved by the court and mother was supervised by the social services in her county in Virginia, it made reasonable efforts to prevent the continued removal of the daughter from the home. The determination of whether the county has made reasonable efforts is governed by R.C. 2151.419, which states in pertinent part:
 (A)(1) Except as provided in division (A)(2) of this section, at any hearing held pursuant to section * * * 2151.353 [2151.35.3] [disposition of abused, neglected or dependent child] of the Revised Code at which the court * * * continues the removal of a child from the child's home, the court shall determine whether the public children services agency or private child placing agency that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts. (Emphasis added.)
The court determined at the hearing that social services had failed to facilitate the mother's visits. The court further found that mother had substantially completed her case plan.
The county claims, however, that by writing and supervising mother's case plan, it fulfilled its obligation to her. It states, it was the mother's responsibility to remedy the conditions causing the removal of the child from her care and custody. * * * The social service agencies can only assist the mother in reunification; she must do the actual work. She needed to visit the child and establish a relationship with the child. Appellant brief at 11. This statement fails to address, however, the failure of the county to assist mother in communicating with and visiting her daughter.
The guardian ad litem contacted the social worker twice on behalf of the mother for assistance in facilitating visitation to further the goal of establishing a relationship with the daughter. The social worker admitted he did not feel the need to provide any assistance. Despite initially telling mother after the adjudicatory hearing that social services would try to meet her halfway between Cleveland and Virginia with the daughter, he admitted that when that plan did not work, he only suggested to mother that she could come and visit on any weekend. Tr. of 6-27-00 at 18. He admitted he made no efforts to facilitate visitation.
Mother lived in Virginia, a ten-hour car trip from Cleveland. At times, she was unemployed and unable to afford transportation to Cleveland. When she was employed, she found it difficult to take off enough time from work to drive twenty hours and also have time to visit with her daughter. Mother also testified that while her son was in the hospital, she felt she needed to stay nearby rather than travel to Cleveland.
She did try, however, to contact and visit her daughter. She reported, however, that the grandparents were obstructing her attempts; when she would call the daughter on the phone, the grandparents would hang up on her. Because the social worker made no attempt to correct the situation, mother worked through the guardian ad litem to contact the daughter.
Although chastising mother for failing to visit the daughter between the adjudicatory hearing in February and the dispositional hearing in June, the court found that the county had failed miserably to do what it should have done in this case * * *. The court expressed disappointment in the actions of both parties and stated that it refused to allow the case to continue to take on a life of its own * * *. Tr. June 26, 2000 at 42. We agree. The county could have made some attempt to assist her in her effort to visit her child. Until February of 2000, however, the case plan listed as its goal to recommend L[egal] C[ustody] to paternal grandparents with a goal date of 5-2000. Case plan (undated.) On February 11, 2000, the case plan's goal changed to change perm. plan goal to B return child to parent. The county made no change in the case plan at that point to facilitate visitation.
It is disingenuous for the county to argue that it made reasonable efforts to reunite the mother and daughter when it failed both to include any visitation in the case plan and to make any effort to overcome the obstacles to visitation the mother faced.
The trial court did not err in finding that the county failed to make reasonable efforts to prevent the continued removal of the daughter from the home.
The second assignment of error is overruled.
For its third assignment of error, the county states:
 III. THE TRIAL COURT ERRED WHEN IT TERMINATED THE TEMPORARY CUSTODY OF THE CHILD AN [sic] PLACED THE CHILD IN THE LEGAL CUSTODY OF THE MOTHER WHEN COMPETENT AND CREDIBLE EVIDENCE SHOWED THAT THE MOTHER HAD NOT REMEDIED THE CONDITIONS CAUSING THE REMOVAL OF THE CHILD FROM THE HOME AND THE COURT'S FINDINGS WERE CONSISTENT WITH EXTENDING TEMPORARY CUSTODY.
First, no evidence was presented at the dispositional hearing to show that mother had not remedied the neglectful conditions; rather, the evidence showed that she had secured stable and secure housing, had remained drug free, and had attended parenting and domestic violence classes.
Despite this evidence, appellant argues that the court should have ordered temporary custody extended even though the county had not requested it. The county relies on R.C. 2151.415(D)(1), which states in pertinent part,
 (D)(1) If an agency pursuant to division (A) of this section requests the court to grant an extension of temporary custody for a period of up to six months, the agency shall include in the motion an explanation of the progress on the case plan of the child and of its expectations of reunifying the child with the child's family, or placing the child in a permanent placement, within the extension period. The court shall schedule a hearing on the motion, give notice of its date, time, and location to all parties and the guardian ad litem of the child, and at the hearing consider the evidence presented by the parties and the guardian ad litem. The court may extend the temporary custody order of the child for a period of up to six months, if it determines at the hearing, by clear and convincing evidence, that the extension is in the best interest of the child, there has been significant progress on the case plan of the child, and there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension.
Although the county did not request an extension of the temporary custody order, the court treated the hearing as a hearing for temporary custody. The evidence does not support the allegation that mother failed to remedy the conditions which caused the daughter to be adjudicated neglected. The daughter had been adjudicated neglected in a hearing on October 5, 1999 when the court found that the mother had failed to provide support for her, failed to meet her basic needs for food, clothing and shelter, lacked adequate stable housing, and had a chronic substance abuse problem. Mother has since maintained stable housing, stayed off drugs, and followed a parenting plan to learn to provide for the daughter's basic needs.
The statute governing the parent's compliance with the case plan is R.C. 2151.414, which states in pertinent part,
 (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.35.3] of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.35.3] of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
The social worker conceded that mother had substantially complied with the case plan. The county's only complaint against mother was her failure to visit the daughter, which visitation was not part of the case plan. The county cannot argue now that mother did not remedy the conditions causing the daughter to be placed outside the home.
Appellant argues that although it did not request an extension of temporary custody, the court should have realized that temporary custody was in the best interest of the daughter and extended the temporary custody by six months. The county claims that the social services in Virginia recommended that mother visit more with the daughter and establish a relationship prior to gaining custody. The county argues, therefore, that the court erred in failing to extend the temporary custody.
Even if the court had erred in failing to order an extension of temporary custody to allow mother to prepare more fully for custody of the daughter, the point is moot. The daughter has been in her mother's custody for over a year. Nothing would be served by returning the daughter to temporary custody in Cleveland to allow the mother to establish a relationship with the daughter now. They have lived together for over a year and have established their relationship.
The third assignment of error is moot.
The trial court did not err in awarding legal custody of the daughter to her mother. The judgment of the trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Juvenile Court Division of the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, J., and FRANK D. CELEBREZZE, JR., J., CONCUR.
[1] All hearings took place in Cuyahoga County, Ohio, although mother lived in Virginia during the pendency of this action.
[2] Father's brief was stricken for not conforming to appellate rules. He was given until May 31, 2001 to file a conforming brief but did not do so.
[3] At the time of the dispositional hearing, the child had spent nearly half her life with her grandparents.
[4] At the hearing, however, the county never requested the alternative of extending its temporary custody. Despite the county's failure to request an extension of temporary custody, the court treated the hearing as a hearing for extension of temporary custody. See Tr. June 26, 2000 at 12. It is appropriate, therefore, for the county to raise this issue on appeal. In fact, the court asked the county if it wanted to put on any evidence as to why this court should continue temporary custody or simply rest on its motion for permanent custody. The county responded by presenting evidence to support continuing temporary custody.